UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE: LISA AND JERRY BONE                                Case No. 23-02626

CREDITOR'S, GRACELAND RENTALS, MOTION FOR
ABANDONMENT AND RELIEF FROM AUTOMATIC STAY

**COMES NOW,** the Creditor, Graceland Rentals, by and through its attorney of record, and files this its Motion for Abandonment and Relief from Automatic Stay, and in support thereof, would respectfully show unto this Honorable Court, as follows:

**(1)**

Creditor would show that the creditor holds a secured interest in the following property which secures this debt, namely, a 10x12 storage shed.

**(2)**

Creditor would show that the Debtor has defaulted pursuant to the terms of the lease attached hereto as Exhibit "A".

**(3)**

That the Trustee and the Debtors should abandon any interest that they may have in the collateral and the stay should be lifted.

**WHEREFORE, Premises Considered**, Creditor, Graceland Rentals, prays that the Bankruptcy Court will abandon and surrender the above described collateral to Graceland Rentals and grant Graceland Rentals relief from the automatic stay to commence repossession of the subject collateral held by the Creditor herein.

1

RESPECTFULLY SUBMITTED, this the <u>5th</u> day of January, 2026.

> Graceland Rentals, Creditor
>
> AKINS & ADAMS, P. A.
>
> By: <u>/s/ Bart M. Adams</u>
> Bart M. Adams
> Attorney for Graceland Rentals

AKINS & ADAMS, P. A.
108 E. JEFFERSON STREET
RIPLEY, MISSISSIPPI 38663
(662) 837-9976

## CERTIFICATE OF SERVICE

I, Bart M. Adams, attorney of record for the Creditor, do hereby certify that the following parties, being registered with the CM/ECF system, have this day received electronic notification to:

Harold J. Barkley, Jr.    HJB@HBarkley13.com

U. S Trustee    USTPRegion05.AB.ECF@usdoj.gov

Thomas Carl Rollins, Jr.    trollins@therollinsfirm.com

Lisa and Jerry Bone
9348 HWY 80
Morton, MS 39117

SO, CERTIFIED, this, the 5th day of January, 2026.

> /s/ Bart M. Adams
> Bart M. Adams
> Attorney for Creditor

DocuSign Envelope ID: 339A8081-FE0D-42CF-BA73-1E68F26272CA1

**GRACELAND RENTALS, LLC**
P.O. BOX 642, CUNNINGHAM, KY 42035
TOLL FREE: 1-866-574-7446



**60 Month Rental Purchase Agreement and Disclosure Statement**

This Rental Purchase Agreement and Disclosure Statement ("Agreement") is made and entered on this 23 day of February 2023 by and between **Graceland Rentals, LLC** (or its successors or assigns) having its principal place of business in Cunningham, Carlisle County, Kentucky (hereinafter referred to as "Merchant") and the primary consumer identified as follows (along with any secondary consumer, collectively "Consumer"):

**A. PRIMARY CONSUMER**

| FIRST NAME | LAST NAME | STREET ADDRESS | CITY | STATE | COUNTY | ZIP |
|---|---|---|---|---|---|---|
| Lisa | Bine | 9348 Hwy 80 | Morton | MS | Scott | 39117 |

| WORK PHONE | SSN/EIN | DATE OF BIRTH | DL NUMBER | DL STATE | EMAIL |
|---|---|---|---|---|---|
| 6015078129 | | 1983-01-14 | 801133169 | MS | bonedlane76@yahoo.com |

**B. SECONDARY CONSUMER**

| FIRST NAME | LAST NAME | STREET ADDRESS | CITY | STATE | COUNTY | ZIP |
|---|---|---|---|---|---|---|
| | | | | | | |

| WORK PHONE | SSN/EIN | DATE OF BIRTH | DL NUMBER | DL STATE | EMAIL |
|---|---|---|---|---|---|
| 6015078129 | | | | | |

**Rental of Property.** For and in consideration of the various obligations set forth herein, Merchant hereby rents to Consumer that certain portable warehouse and equipment ("Property") described as follows and on the following terms:

**C. PROPERTY**

PROPERTY DESCRIPTION / SERIAL NUMBER: 5-LB-193889-1012-0S2820R   CONDITION: ☐ New ☒ Used; Damage (if any): _____
PROPERTY LOCATION (ADDRESS): P3558 Philadelphia lot GL Philadelphia   LANDLORD NAME / PHONE NUMBER: _____

**D. INITIAL RENTAL PAYMENTS**

INITIAL RENTAL PAYMENT AMOUNT: $128.94   NON-REFUNDABLE DOWN PAYMENT (IF ANY): $ 50.00
SALES TAX: $9.03   TOTAL AMOUNT DUE AT SIGNING: $137.97

**E. MONTHLY RENTAL PAYMENT**

RENTAL PAYMENTS: $128.94   TAX RATE: 7.00%   TAXES (SUBJECT TO CHANGE): $9.03
PAYMENT DUE DATE: 10   TOTAL PAYMENT: $137.97

**F. OTHER FEES** (FEES ARE FURTHER DESCRIBED IN THE TERMS)

REINSTATEMENT FEE: $5.00   LATE PAYMENT: SEE SECTION 5(B)   RETURN CHECK FEES: SEE SECTION 5(B)
CANCELLATION FEE: $100   DELIVERY CHARGE: INCLUDED (SUBJECT TO SECTION 2)   DELIVERY FEE AFTER CANCELLATION OR REINSTATEMENT: ACTUAL COSTS (SECTION 6(A))

**G. TOTAL COST OF RENTAL**

If Consumer renews this Agreement each month for 60 months (each a "Rental Term"), Consumer will pay a total of $ 7,736.54 to own the Property plus tax. This total includes all costs included in the Initial Rental Payment. This amount excludes any down payment as well as other charges, such as late fees, reinstatement fees, and similar charges as detailed further in this Agreement.

**H. CASH PRICE OF PROPERTY**

The estimated Cash Price (fair market value) of the Property Consumer is renting is $ 3,352.50.

**I. COST OF RENT TO OWN SERVICES**

The difference between the cost of the rental and the Cash Price is $ 4,384.04 This is the cost of rental services to Consumer under this Agreement if Consumer elects to renew this Agreement for the number of terms necessary to acquire ownership.

Consumer is liable for any loss or damage in excess of normal wear and tear, including if the Property is lost, stolen, damaged, or destroyed and is liable to Merchant for the fair market value in the event of such loss. Consumer is liable for maintaining and servicing the Property while it is being rented. The manufacturer's warranty for the Property will be transferred to Consumer upon transfer of the ownership of the Property. Consumer may terminate this Agreement at any time, free of charge, by surrendering the Property to Merchant at the end of a Rental Term. In the event that Consumer terminates the Agreement, Consumer may reinstate such Agreement (as further described in Section 6) by: (i) paying all past due Rental Payments; (ii) paying the costs associated with redelivering the Property if it has been picked-up by Merchant; and (iii) the Reinstatement Fee. Consumer has the ability to acquire ownership of this Property by: (i) making each of the Monthly Rental Payments; or (ii) by making a payment equal to the sum of: (a) the difference between the Cash Price and 43.3% of the Aggregate Rental Payments made; plus (b) any accrued and unpaid Fees; plus (c) any applicable sales tax; each as further described in the Terms. Consumer will not own the Property until the Consumer has made the number of payments necessary to acquire ownership as detailed herein. The terms and conditions attached hereto ("Terms") are incorporated by reference and govern the relationship between the parties.

Primary Consumer Signature: _[signature]_   Secondary Consumer Signature: _____
Printed Name: Lisa Bine | 864861...   Printed Name: _____

Exhibit "A"

# Monthly Rental Purchase Agreement and Disclosure Statement
## Terms and Conditions

1. **General Information.** This is a rental-purchase agreement as defined by the applicable state law. If applicable, the attached State Specific Addendum ("Addendum") is incorporated herein by reference, as may be necessary, and the state specific provisions apply based on the state in which Consumer resides at the time the Agreement was executed or the state in which this Agreement was executed. Consumer may terminate this Agreement without penalty upon expiration of any Term; provided, Consumer will remain liable for any past due Rental Payments and any damages to the Property. The Monthly Rental Payment is due and owing on the Payment Due Date beginning on February 23, 2023, which accounts for the Initial Payment that was paid as part of this Agreement, and Monthly Rental Payments are due on the same date of each month thereafter. A Down Payment is not required in order to enter into this Agreement; however, where permitted by law, any Down Payment made is used to reduce the Total Cost of Rental and the monthly Rental Payments and is non-refundable after the commencement of the first Rental Term. The Property does not include metal stakes and any other article or material necessary to tie down or affix the Property to the Consumer's real property and such tie-downs or metal stakes will remain the Property of the Consumer. If not included herein, Merchant will provide Consumer with an invoice or other notice stating the serial number of the Property on or before the delivery date of the property.

2. **Delivery, Term and Termination.**
   (a) The term of this Agreement is for one (1) month. The initial Rental Term shall begin at the earliest of: (i) date of delivery of the Property; or (ii) 30 days from the date of this Agreement if the Consumer delays the delivery of the Property for any reason. Consumer may renew this Agreement for consecutive Rental Term equal to one (1) month each by making additional Rental Payments when due for each additional month Consumer wishes to rent the Property until the Consumer has purchased the property in accordance with this Agreement. Subject to the reinstatement option contained herein, Merchant may terminate this Agreement upon the failure by Consumer to timely make the Monthly Rental Payments or by failing to properly maintain the Property. Consumer may cancel this Agreement without any charges within three (3) days after signing this Agreement. After three (3) days from signing, but before delivery of the Property to the Consumer, Consumer shall pay Merchant a cancellation fee of $100. In addition to the Cancellation Fee, in the event this Agreement is cancelled after delivery has been initiated, Consumer will reimburse Merchant its actual delivery costs.
   (b) One delivery trip and setup for the Property to Consumer is included. The free delivery is provided within fifty (50) miles of the Dealer's location along with up to two hours of setup time for the Property. Unless otherwise prohibited by law, Consumer will be responsible for the actual costs of any additional mileage, setup time, or for multiple delivery trips. If Consumer elects to terminate this Agreement or Merchant terminates as a result of an Event of Default, Merchant shall retain the Initial Payment, the Down Payment and any Rental Payments made prior to such termination. Consumer acknowledges and agrees that Consumer is solely responsible for preparing the Property for pick-up by Merchant upon termination and that Consumer is responsible for all costs and expenses related to preparing the Property for pick-up. Merchant will not be responsible for any clean-up or removal of any items or materials other than the Property itself.
   (c) Upon termination of the Agreement, Consumer is responsible for the pick-up fees associated with the surrender of the Property to Merchant in an amount not to exceed the actual costs. Consumer is also responsible for repairing any damage to the Property ordinary wear and tear excepted.

3. **Purchase of Property.**
   (a) If Consumer makes all Rental Payments and otherwise complies with this Agreement, Consumer will acquire ownership of the Property and shall receive an ownership certificate delivered to the address on record.
   (b) Early Purchase Option: Notwithstanding the foregoing, after Consumer has made the first Rental Payment due hereunder, Consumer may purchase the Property by making a payment equal to the sum of: (i) the difference between the Cash Price and 43.33% of the Aggregate Rental Payments made (Cash Price - (Aggregate Rent Paid x 43.3%)); plus (ii) any accrued and unpaid Fees; plus (iii) any applicable sales tax.
   (c) The term "Aggregate Rental Payments" shall mean the sum of all Monthly Rental Payments that have been paid plus the Initial Amount actually paid by Consumer (excluding any taxes associated with such payments). The Consumer does not have an ownership interest in the Property until all amounts due under this Agreement to acquire ownership have been paid.

4. **Consumer Responsibilities.** Consumer acknowledges and agrees that Consumer is solely responsible for providing a site suitable for the Property and determining whether ground conditions are suitable for delivery. Consumer is responsible for all costs and expenses related to preparing the site for the Property. Merchant shall not be held responsible for yard or driveway damage. Merchant and its agents are not responsible for permits, setbacks, restrictions, or covenants that may affect, limit, or prohibit the placement of the Property at Consumer's desired location. It is the responsibility of the Consumer to contact their local codes department or homeowner's association, as necessary, to ensure compliance with such permits, setbacks, restrictions, or covenants. Consumer acknowledges and agrees that the Property is for storage purposes only and is not to be used for a residence of any kind and is not to be permanently affixed to any other property or structure. Consumer shall not permit the Property to be altered to include additional windows, doors, shelves, or fixtures, including but not limited to plumbing, HVAC or climate control system, electricity, the addition of equipment and accessories, or the placing of signs thereon (collectively "Modifications") and shall not permit the Property to be tied or otherwise affixed to any property so such that the Property cannot be removed without damage to the property. The Property shall be kept at the address provided herein and the Property may not be moved from that address without the written consent of Merchant which consent

shall not be unreasonably withheld. Consumer has the responsibility for maintaining the Property and is responsible for any loss of or damage to the Property up to the Fair Market Value which, except as otherwise provided by law, is in an amount to be determined at Merchant's reasonable discretion at the time of such loss. Consumer agrees to promptly remove from the Property all of consumer's personal property at the termination of this agreement, whether such termination is caused by Consumer's default, or by lapse of time, and Merchant may elect that any personal property not removed at such termination by Consumer is deemed abandoned by Consumer and shall become the property of the Merchant without any payment or offset thereto. If Merchant shall not so elect to treat the personal property as abandoned, the Merchant may remove such property from the leased premises and store same at Consumer's risk and expense. If the Consumer is not the landowner where the Property is delivered, the Consumer hereby represents and warrants that he/she has specific permission from the landowner to have the Property delivered and maintained on the landowner's premises. Any damages resulting from the Consumer's misrepresentation under this section shall be borne by the Consumer. Consumer shall be responsible for and pay to the appropriate lawful authority any property taxes, permit fees, and other similar government impositions and charges which may be levied or assessed with respect to the Property. Consumer specifically grants to Merchant, its agents and/or independent contractors the right of entry onto the Consumer's property and waives any and all claims of wrongful entry onto the Consumer's property during the initial delivery of the Property. Consumer agrees to provide reasonable cooperation for Merchant to examine and inspect the Property at all reasonable times. Consumer agrees he/she may be contacted by phone call and/or SMS text message regarding his/her account. Consumer hereby acknowledges the Merchant maintains the right to assign this contract to a third party and further agrees to remit Rental Payments to such party if so assigned.

5. **Default.**

   (a) If Consumer fails to make any Rental Payment when due ("Payment Default"), fails to perform the obligations of the Consumer under this Agreement, or otherwise materially breaches this Agreement (each an "Event of Default"), Merchant shall be entitled to terminate this Agreement. Consumer shall be responsible for and pay to Merchant, in addition to such other damages as the court may award, all of Merchant's reasonable attorneys' fees, court costs and other related expenses of collection and/or repossession, including but not limited to collection agency and/or attorneys' fees incurred in enforcing the terms of this Agreement.

   (b) In the event of any such Payment Default, Consumer will be liable for $25.00 for each Payment Default and Merchant shall be entitled to enforce its state law rights against the Property including the right to sue Consumer for recovery of the Property and any late or unpaid Rental Payments or Fees. All returned checks will be processed electronically for the check amount along with any state allowed fees and an additional fee for returned checks will be assessed equal to the lesser of (i) $35.00; or (ii) the maximum amount permitted by law.

   (c) Consumer hereby gives written consent for Merchant to enter Consumer's property in an Event of Default and authorizes the Merchant and any person having an interest in the real property on which the Property is placed, to enter such property, open gates, cut locks, remove property, disconnect utilities or take any reasonable action, without breach of the peace, that may be necessary to recover the Property or to assist the Merchant in repossessing the Property.

6. **Reinstatement.**

   (a) If Consumer elects to terminate this Agreement or if Merchant terminates this Agreement due to a Payment Default, Consumer can reinstate the Agreement without losing any rights or options within 7 days of such termination ("Reinstatement Period") by: (i) paying all past due Rental Payments; (ii) a reinstatement fee of $5.00 ("Reinstatement Fee"); and (iii) if the Property has been picked-up, then the reasonable cost of pick-up, redelivery and refurbishing in an amount equal to the actual costs.

   (b) If Consumer, at the request of Merchant or its agents, has returned or voluntarily surrendered the Property to Merchant, without judicial process, then: (a) If the Aggregate Rental Payments as of the time of termination are less than 60% of the Total Cost of Rental, the Reinstatement Period shall be a term of 60 days after the date of return of the Property; and (b) if the Aggregate Rental Payments as of the time of termination are 60% or more of the Total Cost of Rental, the Reinstatement Period shall be extended to a total of ninety (90) days after the date of the return of the Property.

   (c) If upon reinstatement the exact Property is not available then a substitute item of comparable quality and condition may be provided by Merchant as part of the Reinstatement, normal wear and tear is to be excepted.

7. **Limitation of Liability.** Notwithstanding anything contained in this agreement to the contrary, Merchant shall not be liable to Consumer or to any other person, firm or corporation by reason of the loss of, damage to or destruction or any contents contained from time to time in the Property, unless such loss, damage or destruction is due to gross negligence or willful misconduct of Merchant or its employees. Any liability of Merchant under this Agreement or otherwise, shall not exceed the fair market value of the Property. In this regard, Consumer warrants and represents to Merchant that no property in excess of the said limit of liability shall be placed in, or stored in the Property other than at the sole peril of Consumer. Further, Merchant shall not be liable to Consumer for, and Consumer hereby releases merchant from any liability related to, any damage to any real or personal property of Consumer that may occur during delivery or recovery of the Property.

8. **Indemnification.** Consumer agrees to indemnify, defend and hold harmless, Merchant and its respective directors, officers, agents, and employees from any third-party lawsuit or claims brought against Merchant based upon or otherwise arising out of (i) any breach by Customer of its representations or warranties contained in this Agreement; or (ii) Customer's own negligence and willful or intentional misconduct.

9. **Warranties.**

   (a) Merchant warrants to Consumer that at the time of delivery the Property shall be free from defects in workmanship. The warranty for workmanship for the Property shall apply to defects which appear within __7__ years of the original manufacture date based on

the serial number on the Property. Consumer shall promptly notify Merchant of any such defect in writing and Merchant shall thereupon correct such defect by repairing or replacing the Property. Consumer understands that all building measurements are approximate and acknowledges that building measurements are from eave to eave. This section and Section 10 set forth the exclusive remedies for all claims based upon failures of or defects in the Property whenever the failure or defect occurs and whether a claim, however instituted, is based on contract, indemnity, warranty, tort (including negligence), strict liability or otherwise. Complete warranty terms and conditions are provided to Consumer by the Dealer in the sales folder. Any Modifications to the Property by Consumer effecting the original workmanship may make the warranty regarding workmanship null and void. Any Modifications by previous Consumer shall not be warrantied or guaranteed by Merchant in any manner and have not been inspected by a licensed professional. No expressed or implied statutory warranty of merchantability or fitness for a particular purpose shall apply to any Property that has had Modifications made to it.

(b) EXCEPT AS OTHERWISE PROVIDED HEREIN, ALL OTHER WARRANTIES INCLUDING, WITHOUT LIMITATION, THE WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE HEREBY WAIVED.

10. **Miscellaneous.** Consumer may not assign any of Consumer's rights under this contract to any third party without the written consent of Merchant provided such consent shall not be unreasonably withheld. Notice is hereby given to any assignee of this Agreement or any interest therein that to the extent this Agreement may be deemed to be a consumer credit contract, the rights of such holder, if any, are subject to all claims and defenses which Consumer could assert against Merchant, but with recovery by Consumer being limited to the amount paid by Consumer hereunder. Failure by Merchant to exercise any right, remedy or option under this Agreement or in any other agreement between the parties hereto, or delay by Merchant in exercising the same will not operate as a waiver to any rights Merchant may have. This Agreement sets forth the entire agreement between Consumer and Merchant relating to the subject matter hereof and may not be changed except by a writing signed by both Consumer and Merchant. All claims, demands, disputes, controversies and differences that may arise between the Consumer and the Merchant concerning any issue relating to the interpretation or enforcement of this Agreement or relating to the rights or liabilities of the Consumer or the Merchant under this Agreement shall be exclusively determined and settled by arbitration ("Arbitration") before an arbitrator, reasonably acceptable to both parties, under the rules of the American Arbitration Association ("AAA"). Nothing in this arbitration agreement is intended to prevent either party from filing a lawsuit in an appropriate small claims court for an amount that does not exceed the court's jurisdictional limits. If counterclaims or other motions would cause the lawsuit to be removed from small claims court to another court, the dispute must be resolved by arbitration. The award of the sole arbitrator shall be binding on the parties to this Agreement, with no right to appeal with respect to any questions of law or law of any other issue to any court, and judgement may be entered on such award in any court having jurisdiction. Except as specifically set forth herein, the rules and procedures of AAA shall govern the Arbitration proceedings. No claim of fraud, duress or other basis for revocation of contract made with respect to this Agreement shall limit or preclude the enforcement of this Agreement to arbitrate. By accepting this arbitration provision, Consumer waives the right to have a jury trial, to engage in discovery (except as may be provided for in arbitration rules), and to participate as a representative or member of a class of claimants or in any consolidated proceeding. To the extent that any provision of this Agreement conflicts with or contravenes any applicable state or Federal law, such provision shall be deemed to be modified to conform to the relevant provision of state or Federal law. Sections of this Agreement have been labeled for the convenience of the parties and such headings are not to be utilized for the purpose of construing the meaning of any provision of this Agreement.

11. **NOTICES TO CONSUMER - READ BEFORE SIGNING**

    (a) DO NOT SIGN THIS AGREEMENT BEFORE YOU READ THE ENTIRE AGREEMENT INCLUDING ANY WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED.

    (b) DO NOT SIGN THIS AGREEMENT IF IT CONTAINS ANY BLANK SPACES.

    (c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.

    (d) YOU HAVE THE RIGHT TO EXERCISE ANY EARLY BUY-OUT OPTION AS PROVIDED IN THIS AGREEMENT. EXERCISE OF THIS OPTION MAY RESULT IN A REDUCTION OF YOUR TOTAL COST OF RENTAL TO ACQUIRE OWNERSHIP UNDER THIS AGREEMENT.

    (e) IF YOU ELECT TO MAKE WEEKLY RATHER THAN MONTHLY PAYMENTS AND EXERCISE YOUR PURCHASE OPTION, YOU MAY PAY MORE FOR THE RENTED PROPERTY.

IN WITNESS WHEREOF, the parties have hereunto affixed their signatures as of the day and date first above written. Consumer acknowledges that it has received a copy of the Agreement.

| PRIMARY CONSUMER | SECONDARY CONSUMER |
|---|---|
| Signature: _____ | Signature: _____ |
| Printed Name: Lisa Brone | 8648827 | Printed Name: _____ |

GRACELAND RENTALS, LLC OR ITS AGENT
Signature: _____
Agent's Name (if any): Corey Adams

This agreement is assigned to: First Horizon Bank
as Agent, with full recourse and warranty unless otherwise released in writing by First Horizon Bank, as Agent

Page 4 of 6                                                              © Graceland Rentals, LLC 2022

## Addendum

### State Specific Amendments

**Section 2. Delivery, Term and Termination.**

For **Colorado** and **South Carolina** Consumers the following is added to the end of Section 2 of the Agreement:

Notwithstanding anything to the contrary in this Agreement, any pickup and delivery costs for the Property shall be limited to $15.00.

For **Georgia** Consumers the following is added to the end of Section 2 of the Agreement:

Upon termination of the Agreement, Merchant shall recover the Property without any additional pickup or other charge to the Consumer.

**Section 3. Purchase of Property.**

For **Arizona** Consumers the following is added to the end of Section 3(b) of the Agreement:

The amount due to exercise the foregoing purchase option is described in additional detail on the attached Early Payoff Schedule detailing the costs associated with the exercise of the purchase option if regularly scheduled Rental Payments are timely made under this Agreement. The Early Payoff Schedule is provided herewith and incorporated herein by reference.

For **South Carolina** Consumers Section 3(b) is deleted and replaced with the following:

Notwithstanding the foregoing, after Consumer has made the first Rental Payment due hereunder, Consumer may purchase the Property by making a payment equal to the sum of: (a) fifty-five percent (55%) of the difference between the Total Cost of Rental and the Aggregate Rental Payments; plus (b) any accrued and unpaid Fees; plus (c) any applicable sales tax.

For **West Virginia** Consumers Section 3(b) is deleted and replaced with the following:

Notwithstanding the foregoing, after Consumer has made the first Rental Payment due hereunder, Consumer may purchase the Property by making a payment equal to the sum of: (a) (i) the Fair Market Value of the Property; divided by (ii) the total number of Monthly Rental Payments contemplated under the Agreement; times (iii) the number of Rental Payments that have not yet become due under this Agreement; plus (b) any accrued and unpaid Fees; plus (c) any applicable sales tax.

**Section 5. Default.**

For **Colorado, Florida, Georgia,** and **Illinois** Consumers Section 5(b) is deleted and replaced with the following:

In the event of any such Payment Default, Consumer will be liable for $5.00 for each late Rental Payment and Merchant shall be entitled to enforce its state law rights against the Property including the right to sue Consumer for recovery of the Property and any late or unpaid Rental Payments or Fees. All returned checks will be processed electronically for the check amount along with any state allowed fees and an additional fee for returned checks will be assessed equal to the lesser of (i) $35.00; or (ii) the maximum amount permitted by law.

For **Indiana** Consumers Section 5(b) is deleted and replaced with the following:

In the event of any such Payment Default by Consumer that is not cured within 5 days of the Rental Payment due date, Consumer will be liable for $8.00 for each late Rental Payment and Merchant shall be entitled to enforce its state law rights against the Property including the right to sue Consumer for recovery of the Property and any late or unpaid Rental Payments or Fees. All returned checks will be processed electronically for the check amount along with any state allowed fees and an additional fee for returned checks will be assessed equal to $25.00.

For **South Carolina** Consumers Section 5(b) is deleted and replaced with the following:

In the event of any such Payment Default by Consumer that is not cured within 5 days of the Rental Payment due date, Consumer will be liable for $4.00 for each late Rental Payment and Merchant shall be entitled to enforce its state law rights against the Property including the right to sue Consumer for recovery of the Property and any late or unpaid Rental Payments or Fees. All returned checks will be processed electronically for the check amount along with any state allowed fees and an additional fee for returned checks will be assessed equal to the lesser of (i) $35.00; or (ii) the maximum amount permitted by law.

For **Missouri** and **New Mexico** Consumers Section 5(b) is deleted and replaced with the following:

In the event of any such Event of Default Merchant shall be entitled to enforce its state law rights against the Property including the right to sue Consumer for recovery of the Property and any late or unpaid Rental Payments or Fees. All returned checks will be processed electronically for the check amount along with any state allowed fees and an additional fee for returned checks will be assessed equal to the lesser of (i) $35.00; or (ii) the maximum amount permitted by law.

For **Texas** Consumers Section 5(b) is deleted and replaced with the following:

In the event of any such Payment Default by Consumer that is not cured within 7 days of the Rental Payment due date, Consumer will be liable for a late fee equal to the lesser of (i) $10.00; or (ii) 10% of the delinquent Rental Payment; for each late Rental Payment and Merchant shall be entitled to enforce its state law rights against the Property including the right to sue Consumer for recovery of the Property and any late or unpaid Rental Payments or Fees. All returned checks will be processed electronically for the check amount along with any state allowed fees and an additional fee for returned checks will be assessed equal to $30.00.

For **West Virginia** Consumers Section 5(b) is deleted and replaced with the following:

In the event of any such Payment Default by Consumer that is not cured within 3 days of the Rental Payment due date, Consumer will be liable for a late fee equal to the lesser of (i) $15.00; or (ii) 5% of the delinquent Rental Payment; for each late Rental Payment and, after providing the required notice, Merchant shall be entitled to enforce its state law rights against the Property including the right to sue Consumer for recovery of the Property and any late or unpaid Rental Payments or Fees. In the event of a Payment Default, Merchant shall provide 7 days advance written notice of its intent to terminate the Agreement to Consumer including (i) the amount of any Rental Payment that Consumer has failed to make; (ii) providing notice of the ability to voluntarily surrender the Property to the Merchant at the current location of the Property; (iii) the amount of any late fee that has been or may be assessed; and (iv) the Consumer's right to reinstate the Agreement including the process for doing so, amounts due, and timing of the same as well

as the effect of any reinstatement. All returned checks will be processed electronically for the check amount along with any state allowed fees and an additional fee for returned checks will be assessed equal to the lesser of (i) $35.00; or (ii) the maximum amount permitted by law.

For **Arizona, Kansas, Louisiana, Washington,** and **Virginia** Consumers Section 5(c) is deleted and replaced with the following:

Merchant shall have the right to enter the Consumer's premises to recover and repossess the Property only after obtaining permission from the Consumer immediately prior to such access.

### Section 6. Reinstatement.

For **Indiana** Consumers Section 6(b) is deleted and replaced with the following:

If Consumer, at the request of Merchant or its agents, has returned or voluntarily surrendered the Property to Merchant within seven (7) days after the date the Merchant requests the Property be surrendered, without judicial process, then the Consumer's Reinstatement Period shall be a term of one-hundred and twenty (120) days after the date of return of the Property.

For **Missouri** Consumers Section 6(b) is deleted and replaced with the following:

If Consumer, at the request of Merchant or its agents, has returned or voluntarily surrendered the rented property to Merchant within a timely manner after the date the Merchant requests the Property be surrendered, without judicial process, then the Consumer's Reinstatement Period shall be a term of 3 months after the date the last rental Term expired.

For **Colorado** Consumers Section 6(b) is deleted and replaced with the following:

If the Aggregate Rental Payments as of the time of termination are 60% or more of the Total Cost, the Reinstatement Period shall be extended to a total of one hundred twenty (120) days after the date of the return of the Property.

For **Arizona** Consumers Section 6(b) is deleted and replaced with the following:

If Consumer, at the request of Merchant or its agents, has returned or voluntarily surrendered the Property to Merchant, without judicial process, then: (i) If the Aggregate Rental Payments as of the time of termination are less than 60% of the Total Cost, the Reinstatement Period shall be a term of 60 days after the date of return of the Property, provided, the Property was returned within 7 days after Consumer's receipt of a written demand for the return of the Property from Merchant containing notice of the Consumer's opportunity to obtain the extended Reinstatement Period; and (ii) If the Aggregate Rental Payments as of the time of termination are 60% or more of the Total Cost, the Reinstatement Period shall be extended to a total of 180 days after the date of the return of the Property, provided, the Property was returned within 14 days after the Consumer's receipt of a written demand for the return of the Property from Merchant containing notice of the Consumer's opportunity to obtain the extended Reinstatement Period. Notwithstanding anything herein to the contrary, any Reinstatement Fee contemplated herein will only be assessed if the Monthly Rental Payment is more than 7 days past due.

For **Illinois** and **Texas** Consumers Section 6(a) is deleted and replaced with the following:

If Merchant terminates this Agreement due to Consumer's failure to make a Rental Payment in a timely manner, Consumer can reinstate the Agreement without losing any rights or options within sixteen (16) days of such non-renewal: by payment of all past due Rental Payments; and if the Property has been picked-up, then the reasonable cost of pick-up, redelivery and refurbishing (up to $300); a reinstatement fee of $5 ("Reinstatement Fee").

For **Tennessee** Consumers Section 6(b) is deleted and replaced with the following:

If Consumer, at the request of Merchant or its agents, has returned or voluntarily surrendered the Property to Merchant without judicial process, then: (i) If the Aggregate Rental Payments as of the time of termination are less than 60% of the Total Cost, the Reinstatement Period shall be a term of sixty (60) days after the date of return of the Property; (ii) If the Aggregate Rental Payments as of the time of termination are 60% or more of the Total Cost, but less than 80% of the Total Cost, the Reinstatement Period shall be extended to a total of ninety (90) days after the date of the return of the Property; and (iii) if the Aggregate Rental Payments as of the time of termination are 80% or more of the Total Cost, the Reinstatement Period shall be extended to a total of one hundred eighty (180) days after the date of the return of the Property.

For **West Virginia** Consumers Section 6(b) is deleted and replaced with the following:

If Consumer, at the request of Merchant or its agents, has returned or voluntarily surrendered the Property to Merchant without judicial process, then: (i) If the Aggregate Rental Payments as of the time of termination are less than 40% of the Total Cost, the Reinstatement Period shall be a term of 60 days after the date of return of the Property; and (ii) if the Aggregate Rental Payments as of the time of termination are 40% or more of the Total Cost, the Reinstatement Period shall be extended to a total of 90 days after the date of the return of the Property.

### Section 9. Warranties.

For **West Virginia** Consumers Section 9(b) is deleted in its entirety.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE: LISA AND JERRY BONE            Case No. 23-02626

### ORDER RESOLVING CREDITOR'S MOTION FOR ABANDONMENT AND RELIEF FROM AUTOMATIC STAY (DK# )

This matter is before the Court on the Motion of Graceland Rentals for relief from the automatic stay of 11 U.S.C. §362 (Dkt# ). Movant represented to the Court that it served the motion in accordance with all applicable rules. No opposition or response was presented by the Debtor, therefore, the Court finds as follows:

(1)

That the Court has jurisdiction over the parties and the subject matter, herein.

(2)

That the creditor holds a secured interest in the following property which secures this debt, namely, a 10x12 storage shed.

(3)

That the automatic stay of 11 U.S.C. §362 is hereby immediately lifted as to the 10x12 storage shed.

(4)

That the Creditor's Motion to Abandon and Relief from the Automatic Stay is hereby granted as to the aforementioned property.

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Graceland Rentals' Motion to Abandon and Relief from Automatic Stay is hereby granted. Further, that the aforementioned collateral is hereby abandoned from the bankruptcy estate and the Creditor shall be entitled to pursue any and all remedies available through state law to foreclose on the subject collateral.

##ENDOFORDER##

Submitted by:
Bart M. Adams, Esq. Bar No.:100985
108 E. Jefferson St.
Ripley, MS 38663
(662) 837-9976
bart@akinsadams.com